UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUDITH INFIELD,

    Plaintiff,

v.                                      Case No:   2:15-cv-688-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Judith Infield's Complaint (Doc. 1) filed on November 4, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    A.    **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

B.  **Procedural History**

On August 10, 2011, Plaintiff filed an application for disability insurance benefits ("DIB"). (Tr. at 95, 166-69). Plaintiff asserted an onset date of July 1, 2011. (Tr. at 166). Plaintiff's applications were denied initially on October 7, 2011, and on reconsideration on December 21, 2011. (Tr. at 95, 110). A hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans on April 2, 2014. (Tr. at 30-84). The ALJ issued an unfavorable decision on August 7, 2014. (Tr. at 12-23). The ALJ found Plaintiff not to be under a disability from July 1, 2011, through the date of the decision. (Tr. at 23).

On September 22, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on November 4, 2015. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 12).

C.  **Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

2

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2014. (Tr. at 14). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2011, the alleged onset date. (Tr. at 14). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: arthritis/degenerative joint disease, CAD status-post myocardial infarction with subsequent bypass graft procedure, and fibromyalgia (20 C.F.R. 404.1520(c)). (Tr. at 14). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. at 15). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling. Claimant must avoid all climbing of ladders, ropes, or scaffolds. Claimant is limited to reaching frequently with her right dominant upper extremity. Claimant is limited to occasional exposure to extreme cold. Claimant can work occasionally in close proximity to hazardous moving mechanical parts but must never work in high exposed places.

(Tr. at 15-16). The ALJ determined that Plaintiff is capable of performing her past relevant work as an interior decorator designer and this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Tr. at 21).

Even though the ALJ determined that Plaintiff is capable of performing her past relevant work, the ALJ made the alternative step five finding that there are other jobs that exist in the national economy that Plaintiff is also able to perform. (Tr. at 21). At step five, the ALJ found that considering Plaintiff's age, education, work experience, residual functional capacity and vocational expert testimony, Plaintiff is capable of performing the following jobs: (1) display designer, DOT # 142.051-010, sedentary exertional level, SVP of 7; and (2) commercial designer, DOT # 141.061-038, sedentary exertional level, SVP of 7. (Tr. at 22).[2] The ALJ concluded that Plaintiff was not under a disability from July 1, 2011, through the date of the decision. (Tr. at 23).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises three issues. As stated by Plaintiff they are:

1) The ALJ erred as a matter of law in rejecting the opinion of treating cardiologist, Brian Taschner, M.D., whose opinion regarding the Plaintiff's residual functional capacity is well-supported by the medical evidence of record and is entitled to significant deference under established Eleventh Circuit precedent.

2) The ALJ erred by failing to find the Plaintiff's bipolar disorder to be a severe impairment.

3) The ALJ's finding that the Plaintiff retains a residual functional capacity for light work is not supported by substantial evidence.

(Doc. 15 at 2). The Court will address each issue in turn.

### A. Weight of Treating Physician's Opinion

Plaintiff argues that the summary rejection of the opinion of Plaintiff's treating physician, Brian Taschner, M.D., by the ALJ does not afford Dr. Taschner's opinion the proper consideration it is due. (Doc. 15 at 7). Plaintiff asserts that Dr. Taschner had a long-established relationship with Plaintiff as her treating cardiologist. (Doc. 15 at 7). Specifically, Plaintiff asserts that Dr. Taschner's limitation of fatigue and the need for Plaintiff to be able to elevate her legs is amply supported by the medical evidence of record. (Doc. 15 at 7). The Commissioner

asserts in response that the ALJ provided good reasons for giving little weight to the opinion of Dr. Taschner. (Doc. 16 at 13).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Id*. Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004).  The Eleventh Circuit concluded that good cause exists when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*

Turning to the ALJ's opinion as to Plaintiff's cardiac condition, the ALJ discusses Plaintiff's cardiac condition in several places in the decision.  The ALJ noted that in late September 2011 at a cardiology checkup, Plaintiff showed no dyspnea, had normal blood pressure, normal muscle strength, and was doing well cardiovascularly.  (Tr. at 17).  The ALJ considered the treatment notes from October 2011, indicating Plaintiff reported chest pains, but after cardiac and stress testing, the pains were determined to be likely musculoskeletal in origin.  (Tr. at 18).  The ALJ indicated that in February 2012, Plaintiff reported feeling generally well from a cardiac standpoint; in March 2012, Plaintiff had no cardiac symptoms; in November 2012, Plaintiff reported dyspnea only when bending; and in January 2013, Plaintiff reported feeling well.  (Tr. at 17-18).  The ALJ noted that in January 2014, Plaintiff showed no significant complaints with an EKG showing a normalized ejection fraction and otherwise only mild abnormalities.  (Tr. at 18).  The ALJ indicated that in February 2014 Plaintiff had isolated chest pains, but her examination was unremarkable and her EKG was normal.  (Tr. at 18).  At that time, the ALJ noted that Plaintiff's cardiac workup was unremarkable or showed only mild abnormalities and no edema.  (Tr. at 18).

The ALJ summarized Plaintiff's cardiovascular condition as follows:

> the claimant's subjective reports are not supported by the medical evidence of record.  Post-surgery in 2011 and early 2012, claimant appeared to be doing well

7

> from a cardiac standpoint. Physical examination was largely unremarkable. She was able to remain active and had had no cardiac symptoms but for isolated chest pains and dyspnea which appeared not connected to any cardiovascular condition. Cardiac workup in April 2012 was essentially normal. Later in 2013 and 2014, EKG, cardiac workup, and x-ray showed a normalized ejection fraction, no edema, and otherwise only mild cardiovascular abnormalities. Claimant's hypertension was generally well controlled with treatment and is considered non-severe. Claimant's urinary complaints are also considered nonsevere as testing showed only mild stress incontinence and otherwise minor digestive or urinary abnormalities requiring only isolated treatment.

(Tr. at 20). The ALJ reviewed Dr. Taschner's opinion as to Plaintiff's limitations. (Tr. at 21).

The ALJ determined the following:

> Claimant's cardiologist opined in March 2014, that the claimant was limited to working no more than six hours daily, could frequently lift no more than twenty pounds, and would frequently need to elevate her legs. This opinion is given little weight as it is not supported by substantial medical evidence as no medical or treatment note required the claimant to frequently elevate her legs daily and repeated cardiovascular workup and testing, as noted above, has shown claimant's cardiac condition to have stabilized and her to have no more than mild abnormalities at this time (30F).

(Tr. at 21).

Upon review of Dr. Taschner's treatment notes, the treatment notes demonstrate on July 27, 2011, Plaintiff was unable to complete a stress test due to fatigue and shortness of breath. (Tr. at 475). On August 18, 2011, September 27, 2011, Dr. Taschner found Plaintiff doing well from a cardiac standpoint, but Plaintiff did report fatigue. (Tr. at 478, 481). On February 3, 2012, Dr. Taschner found Plaintiff feeling generally well, no edema, and was walking for 2 miles regularly, but still reported fatigue. (Tr. at 592-93). On May 3, 2012, Plaintiff reported chest pain that had resolved, no edema, elevated blood pressure, and fatigue. (Tr. at 595). On November 16, 2012. Plaintiff complained of fatigue, and shortness of breath when bending and standing back up, but no edema. (Tr. at 596, 598). On January 17, 2013, Plaintiff was feeling well with no edema, but continued to have fatigue. (Tr. at 600). In October 2013, Plaintiff

8

appeared healthy and in no distress, but exhibited trace edema. (Tr. at 965). On January 30, 2014, Dr. Taschner found Plaintiff to exhibit no edema, had full range of motion, and continued to be positive for fatigue. (Tr. at 950, 953). Plaintiff denied having any cardiac complaints and her ejection fraction was normalized but she continued to have mild aortic stenosis. (Tr. at 949).

On March 25, 2014, Dr. Taschner completed a medical statement. (Tr. at 944-45). Dr. Taschner found Plaintiff suffered from fatigue on exertion and angina discomfort. (Tr. at 944). Dr. Taschner limited Plaintiff to working for 6 hours per day; standing for 2 hours at one time; sitting for 2 hours at one time; lifting 20 pounds occasionally; 20 pounds frequently; and needing to elevate legs frequently during an 8-hour workday. (Tr. at 944-45). Dr. Taschner commented that the "echo cardiogram in October 2013 showed normalization of left ventricular function. There is persistent mild aortic stenosis." (Tr. at 945).

After consideration of Dr. Taschner's treatment notes and opinion as well as the ALJ's decision, the Court finds that the ALJ demonstrated good cause for affording little weight to Dr. Taschner's opinion, and this determination was supported by substantial evidence. The ALJ considered Dr. Taschner's treatment notes demonstrating that Plaintiff remained active and she was doing well from a cardiac standpoint. (Tr. at 20). For example, the ALJ noted that in April 2012, Plaintiff's cardiac workup was essentially normal. (Tr. at 20). Moreover, many treatment notes indicated that Plaintiff did not suffer from edema. (Tr. at 20). The ALJ considered Plaintiff's cardiac medical records and compared them to Dr. Taschner's opinion that found Plaintiff able to work no more than 6 hours daily, and required Plaintiff to be able to elevate her legs. (Tr. at 21). The ALJ determined that these limitations in Dr. Taschner's opinion were not supported by substantial evidence in that no medical records required Plaintiff to elevate her legs. (*See* Tr. at 21).

9

In this case, Plaintiff failed to cite to any medical records requiring Plaintiff to keep her legs elevated for any length of time during the day. The Court recognizes that Plaintiff occasionally had edema in her legs; however, most of Dr. Taschner's treatment notes indicated no edema. (*See*, *e.g.*, Tr. at 593, 598, 600). Further, although Plaintiff reported that she suffered from fatigue, with the exception of Dr. Taschner's conclusion that limited Plaintiff to working only 6-hour days, none of the treatment notes indicated that Plaintiff was unable to work a full day due to the fatigue. Further, the majority of the treatment notes indicated that Plaintiff's cardiac workup was essentially normal. Thus, the Court finds that substantial evidence supports the ALJ's decision to afford little weight to the opinion of Dr. Taschner.

### B. Bipolar Disorder

Plaintiff argues that the ALJ erred in failing to find Plaintiff's bipolar disorder to be a severe impairment at step two of the sequential evaluation and, further, the ALJ erred in failing to consider Plaintiff's GAF scores when determining Plaintiff's severe impairments. (Doc. 15 at 9-11). The Commissioner argues in response that the ALJ properly determined that Plaintiff's bipolar disorder was not a severe impairment. (Doc. 16 at 5).

At step two of the sequential evaluation, the severity of a claimants impairments is analyzed. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.

1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ is required to consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In the instant case, the ALJ found other severe impairments, including arthritis/degenerative joint disease, CAD status-post myocardial infarction with subsequent bypass graft procedure, and fibromyalgia. (Tr. at 14). Thus, even though the ALJ did not find Plaintiff's bipolar condition to be a severe impairment, if he considered it in combination with Plaintiff's other severe and non-severe impairments, then ALJ did not err.

In the decision, the ALJ noted that Plaintiff only sought mental health treatment for a few months in 2011. (Tr. at 14). The ALJ noted that Plaintiff's mental condition appeared well controlled with a proper medication regimen. (Tr. at 14). The ALJ also considered the four broad functional areas in section 12.00C of the Listing of Impairments. (Tr. at 14-15). Finally, the ALJ concluded that Plaintiff's bipolar disorder did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and, was therefore non-severe. (Tr. at 14). Even though the ALJ did not find Plaintiff's bipolar disorder severe, the ALJ considered

it in conjunction with Plaintiff's other severe and non-severe impairments. (*See* Tr. at 17). The ALJ noted that Plaintiff was diagnosed with bipolar disorder, received medications for it, and her condition improved. (Tr. at 17). Therefore, even if the ALJ erred in failing to find Plaintiff's bipolar disorder a severe impairment, the error was harmless because the ALJ found other severe impairments at step two and considered Plaintiff's bipolar disorder in combination with Plaintiff's severe and non-severe impairments.

Plaintiff also asserts that the ALJ erred in ignoring Plaintiff's GAF scores. (Doc. 25 at 9). Plaintiff claims that had the ALJ considered Plaintiff's GAF scores that demonstrate Plaintiff has serious symptoms, the ALJ would have found Plaintiff's mental health disorders severe. (Doc. 15 at 10).

"Although GAF scores frequently have been cited in Social Security disability benefits determinations, the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009) (internal quotation marks omitted) (citing *Wind v. Barnhart*, 133 F. App'x 684, 692 (11th Cir. 2005)). Courts in this district have also recognized that GAF scores are of "questionable value in determining an individual's mental functional capacity." *Wilson*, 653 F. Supp. 2d at 1293 (quoting *Gasaway v. Astrue*, No. 8:06-CV-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)). Given their questionable value, courts have generally declined to find reversible error where an ALJ does not expressly discuss a claimant's GAF scores. *See, e.g.*, *Bailey v. Astrue*, No. 3:09-cv-383-JJRK, 2010 WL 3220302, at *8-9 (M.D. Fla. Aug. 13, 2010) (finding the ALJ's failure to mention Plaintiff's GAF scores did not require remand); *Smith v. Comm'r of Soc. Sec.*, No. 6:10-cv-1478-Orl-31 KRS, 2011 WL

12

6217110, at *6-7 (M.D. Fla. Nov. 1, 2011), *report and recommendation adopted*, 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874 (11th Cir. 2012)).

In this case, even though the ALJ did not specifically mention Plaintiff's GAF scores, he thoroughly considered Plaintiff's mental health condition and subjective complaints. (*See* Tr. at 16, 17). *See Lacina v. Comm'r Soc. Sec. Admin.*, 606 F. App'x 520, 527 (11th Cir. 2015) (holding that because the ALJ thoroughly considered the evidence relevant to Lacina's mental impairments and the ALJ's conclusions were supported by substantial evidence, then even though the ALJ failed to mention or accord weight to Lacina's GAF scores, at most this error was harmless). Further, the ALJ considered Plaintiff's mental health condition in combination with Plaintiff's physical limitations. (Tr. at 16, 17). Thus, even if the ALJ erred in failing to mention or consider Plaintiff's GAF scores, this error is harmless because the ALJ thoroughly considered Plaintiff's mental impairments, and considered them in combination with Plaintiff's other severe and non-severe impairments. Therefore, the Court finds that the ALJ did not err in failing to mention or consider Plaintiff's GAF scores and substantial evidence supports that ALJ's decision at step two of the sequential evaluation.

### C. RFC of Light Work

Plaintiff argues that the ALJ erred in failing to adopt the limitations found by state-agency consultants when formulating Plaintiff's RFC. (Doc. 15 at 12). Plaintiff claims that one state-agency reviewing physician opined that Plaintiff was capable of standing and walking for no more than a total of 4 hours in each workday, which is less than the 6 hours required to perform work at the light exertional level. (Doc. 15 at 12). Further, Plaintiff asserts that this state-agency examiner assessed Plaintiff with limitations in reaching in all directions, including overhead. (Doc. 15 at 12). Plaintiff claims that the RFC only contained a restriction as to

frequent reaching with Plaintiff's dominant right upper extremity and failed to include the limitations mentioned by the state-agency physician. (Doc. 15 at 13). Plaintiff claims that the ALJ ignored documentation throughout the medical records demonstrating that Plaintiff has limitations in the use of her upper extremities. (Doc. 15 at 13). The Commissioner argues in response that the ALJ considered the state-agency opinions and considered the medical evidence concerning Plaintiff's limitations in the use of her arms when formulating Plaintiff's RFC.

Although Plaintiff fails to mention the state-agency physician by name, Plaintiff cites to the evaluation of Gurcharan Singh, M.D. for the proposition that the ALJ did not adopt the limitations found by a state-agency physician. (Doc. 15 at 12; Tr. at 555-61). Dr. Singh found Plaintiff able to stand/walk for at least 2 hours in an 8-hour workday; stand/walk a total of 4 hours in an 8-hour workday; and sit a total of 6 hours in an 8-hour workday. (Tr. at 556). Dr. Singh found that Plaintiff was limited in reaching in all directions, specifying that Plaintiff is limited to occasional overhead reaching "RUE" (right upper extremity). (Tr. at 558). The ALJ afforded significant weight to the opinion of the state-agency examiners that Plaintiff was capable of less than the full range of light work, finding these opinions were consistent with the totality of the medical evidence as a whole. (Tr. at 20).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the

14

Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Beginning with Dr. Singh's limitations of standing/walking a total of 4 hours in an 8-hour workday, the ALJ found that Plaintiff was capable of performing light work with limitations. (Tr. at 15).[3] In the first hypothetical to the vocational expert, the ALJ asked the vocational expert, *inter alia*, to consider an individual that was able to stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. (Tr. at 61). With this information as well as the other parameters in the first hypothetical, the vocational expert found this individual capable of performing Plaintiff's past relevant work. (Tr. at 61-62). The ALJ did not stop there, however. In the second hypothetical, the ALJ asked the vocational expert, *inter alia*, to consider someone who was capable of standing and/or walking for 4 hours in an 8-hour workday and able to sit for 6 hours in an 8-hour workday. (Tr. at 62) With these limitations as well as others, the vocational expert found that this person was unable to perform Plaintiff's past relevant work, but was capable of performing other work in the national economy, including display designer and commercial designer. (Tr. at 62-64).

In this case, the ALJ found that Plaintiff could perform her past relevant work, but also made the alternative finding that at step five of the sequential evaluation, Plaintiff was able to perform other jobs such as display designer and commercial designer. The hypothetical

---

[3] Regulations provide that light work, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 1567(b). Thus, light work may entail a good deal of walking or standing, or may entail a good deal of sitting most of the workday.

15

proposed to the vocational expert limited the individual to standing/walking 4 hours in an 8-hour day and sitting 6 hours in an 8-hour day, which are the same limitations found by Dr. Singh. Thus, even if the ALJ erred in not adopting Dr. Signh's limitations in Plaintiff's RFC determination, the error was harmless because the ALJ found in the alternative that Plaintiff was capable of performing jobs with the limitation of standing/walking for a total of 4 hours in an 8-hour workday and sitting for 6 hours in and 8-hour workday.

The second limitation Plaintiff claims that the ALJ failed to adopt was Dr. Singh's finding that Plaintiff was limited in her ability to reach in all directions, including overhead. (Doc. 15 at 12). Dr. Singh found Plaintiff limited in reaching in all directions, including overhead, but specified that she is limited to occasional overhead reaching with the right upper extremity. (Tr. at 558). Plaintiff argues that the RFC limited Plaintiff to reaching frequently with her right dominant upper extremity and that limitation did not account for Dr. Singh's finding of occasional overhead reaching. (Doc. 15 at 12-13; Tr. at 558). Plaintiff appears to be arguing that Dr. Singh limited Plaintiff as to reaching in all directions, including overhead as to *both* extremities. (Doc. 15 at 12-13). Dr. Singh clarified his limitation to include that Plaintiff was limited to occasional overhead reaching with the *right* upper extremity only. Thus, the Court does not find merit in Plaintiff's argument that Dr. Singh found limitations as to Plaintiff's left upper extremity.

As to the right upper extremity, Plaintiff argues that she has a history of limitations in her shoulder due to rheumatoid arthritis. (Doc. 15 at 13). Although the medial records do contain instances of Plaintiff's complaints of pain, stiffness and inflammation in her joints, the medical records also contain instances on examination when Plaintiff had an active range of motion, not limited, with mild to moderate pain in her right shoulder. (*See, e.g.*, Tr. at 416, 679, 682-83, 687,

691, 700, 703, 707, 721, 726, 729-30).  Further, on August 5, 2013, October 7, 2013, and February 3, 2014, Plaintiff had normal range of motion in her right and left upper extremity (Tr. at 734, 808, 814).  Thus, substantial evidence of record supports the ALJ's limitation to frequent reaching with Plaintiff's right dominant upper extremity and no limitation as to Plaintiff's left upper extremity.  The Court finds that the ALJ's RFC determination is supported by substantial evidence.

### III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on February 15, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties